Donald E. **NICHOLSON**, Plaintiff,

v.

**Robert H. FINCH, Secretary of Health, Education, and Welfare, Defendant.**

**No. 2809.**

United States District Court,
D. Montana,
Great Falls Division.

April 15, 1970.

Hoyt & Bottomly, Great Falls, Mont., for plaintiff.

Otis L. Packwood, U. S. Atty., Billings, Mont., James B. Patten, Asst. U. S. Atty., Butte, Mont., for defendant.

## OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

Petitioner seeks to review the action of the Appeals Council of the Social Security Administration denying his claim for disability insurance under the Social Security Act.

The Court has decided as a matter of law that:

1. In any case where an application for disability insurance may be treated as a petition to reopen, it should be so treated if by doing so insurance is available which would not be available if the application is treated as an original application.

2. When a petition to reopen is filed the Secretary is required to exercise his discretion as to whether he will grant the petition to reopen or not and that an applicant is entitled to the exercise of that discretion.

The factual background out of which these holdings arise is: On June 12, 1961, petitioner was admitted to the State Hospital for the Insane with a severe psychiatric impairment. When discharged on July 17, 1961, he was mildly improved with a prognosis of fair to poor. The evidence of petitioner and his wife was to the effect that petitioner was unable to do any substantial work in 1961 and 1962. A social security report of interview reads:

"The first time Mr. Nicholson came to our office was in October 1963. At that time he was extremely nervous— his hands shook all the time he was at my desk and he couldn't or didn't seem to be able to remember too much about his prior work. He was not sure what income he had reptd for Social Security. Since 20/40 was questionable medical evidence was not requested.

When it appeared we could establish the necessary quarters of coverage we called Mr. Nicholson to the D/o to complete the development of his claim. The last time he was in the office was July 9th. He appeared much thinner and still acted nervous. His hands shook but not as bad as they did before. He stated the job at Safeway was secured through the Montana Bureau of Vocational Rehab. and he wanted to continue if he could." (Tr. p. 149–150)

Dr. Gelernter, a psychiatrist to whom petitioner had been referred by the Division of Vocational Rehabilitation, reported to the Division on February 26, 1964:

"As I said, I do not know what is wrong with this man except that he certainly does seem to be chronically incapacitated. I am not at all sure that he doesn't have an organic lesion as reason for his tremor, and would suggest that this be investigated at a later date should he not get symptomatic relief now." (Tr. 162)

In a letter to the Social Security Administration dated June 16, 1964, Dr. Gelernter said:

"I realize that it (his previous report) makes no definite statement as to whether he might be permanently disabled. As stated however, he had been chronically incapacitated to that time and, in all probability, the prognosis would be considered very poor." (Tr. 160)

At the time of the interview of February 24, 1964 Dr. Gelernter prescribed medication for petitioner. In May of 1964 petitioner started working for Safeway Company at a salary of $70.00 per week doing odd jobs. He kept this em-

ployment until September of 1965. From May 6, 1966 until May 14, 1966, and September 23 to September 30, 1966 he worked for Western Maintenance Company. He was then employed from October 21, 1966 until November 25, 1966 at the State Hospital for the Insane.

The Appeals Council, in finally rejecting the application, made these findings:

"1. The claimant last met the special earnings requirements of the Social Security Act on September 30, 1961.

2. The claimant has not established a physical or mental impairment, or combination of impairments, which rendered him unable to engage in substantial gainful activity for a continuous period beginning on or before September 30, 1961, and extending a sufficient length of time to permit the establishment of a period of disability under the application filed on January 5, 1967.

3. The claimant was not under a 'disability' which would give rise to a period of disability, beginning on or before September 30, 1961, and extending within 12 months of the application filed on January 5, 1967." (Tr. 9)

If the application of June, 1967, is treated as a new application, then the findings are supported by the evidence, regardless of petitioner's present condition which the Appeals Council did not determine, and the result reached is correct because of the finality of the initial determination and because of the 12 months bar imposed by 42 U.S.C.A. § 416 (i) (2) (E).

20 C.F.R. § 404.957 provides in part:

"An initial or reconsidered determination of the Administration or a decision of a hearing examiner or of the Appeals Council which is otherwise final under § 404.908, § 404.916, § 404.940, or § 404.951 may be reopened:

(a) Within 12 months from the date of the notice of the initial determination (see § 404.907), to the party to such determination, or

(b) After such 12-month period, but within 4 years after the date of the notice of the initial determination (see § 404.907) to the party to such determination, upon a finding of good cause for reopening such determination or decision, or * * *."

In this case petitioner filed an application for disability insurance on October 24, 1963, alleging a disability which began July 1, 1961. This application was administratively denied November 2, 1964. The hearings examiner treated the application of January 5, 1967 as a petition to reopen the application of October, 1963, and found good cause for so doing. The decision of the Appeals Council does not so treat the 1967 application and rather clearly indicates that that application was treated as an initial application. The Appeals Council used these words, "It is the decision of the Appeals Council that, based on his application filed on Jan. 5, 1967 claimant is not entitled to a period of disability."

The manner in which the 1967 application is treated is of great importance in this case. When the application was filed in 1963 petitioner, as determined by both the Hearings Officer and the Appeals Council, met the special earnings requirements of 42 U.S.C.A. § 416 (i) (3) (B) because he had 20 quarters of coverage out of the preceding 40 quarter period. By the time the application was denied there was evidence from which it might well have been found that petitioner was disabled for a continuous period beginning on the date of the commitment to the State Hospital in June, 1961, and ending when he went to work in May, 1964. Had these facts been found, then a "period of disability" would have had to be considered in relation to the special earnings requirements. Upon the reopening of the matter in 1967 the Secretary could have counted the quarters of coverage between May, 1964 and January, 1967, and would not have been required to count the quarters included in the "period of disability" existing prior to August, 1964, by virtue of the lan-

guage of 42 U.S.C.A. § 416(i) (3) which reads:

"For the purpose of subparagraph (B) of this paragraph, * * *, * * * a quarter shall not be counted as a part of any period if any part of the quarter was included in a period of disability unless such quarter was a quarter of coverage."

██ If an applicant for disability insurance has met the special earnings provisions of the law at the time he files his application; if he is then in fact disabled within the meaning of the law; if at that time good cause exists to reopen an earlier disallowed application; and if the factor which determines whether or not there is insurance coverage is the manner in which the application is treated, i. e., as an initial application or a petition to reopen, then the Secretary should be required to treat the application as a petition to reopen. Otherwise a legal right is denied simply by an unregulated whim which dictates the use of one set of words rather than another.

██ This is not to say that when the application is treated as a petition to reopen the Secretary does not have the exclusive right to determine whether good cause exists to reopen. (Brockman v. Finch, 418 F.2d 116 (9 Cir. 1969)). It is to say that the Secretary, under the specified conditions, must treat the application as a petition to reopen and must then exercise his discretion.[1]

██ The right to have the Secretary's discretion exercised is not in this case an empty right because if that discretion is exercised it will focus the atten-

tion of the Secretary upon problems which so far as the present record is concerned were not in focus at all. As bearing upon the good cause issue as that in turn bears upon the right to reopen, the Secretary might compare the evidence now available with that available in 1964. The hearing examiner thought that the record as of March 6, 1968 did contain new and material evidence. It is clear from the Disability Determination and Transmittal and the letter of advice to petitioner dated November 2, 1964, that the claims representatives were almost entirely concerned with the then present condition of petitioner, and the fact that he had improved and was working. If there were any efforts to determine whether some periods of disability existed between 1961 and May, 1964, they were minimal. This fact might be considered.

Should the Secretary exercise his discretion in favor of reopening then the Secretary will not face the problem of whether the period of disability was continuous from September 30, 1961 to a period within 12 months of January 5, 1967, but whether there was a "period of disability" between September, 1961 and May, 1964. In considering the problem it could be determined from the evidence presently in the record that there was a disability from June, 1961 to some time after February, 1964. The fact of employment in May, 1964 would not weigh so heavily in judging the shorter period because the statements of Dr. Gelernter and the Social Security Service employees show a change for the better in petitioner's condition after February, 1964, and

---

[1] "Yellin might not prevail, even if the Committee takes notice of the risk of injury to his reputation or his request for an executive session. But he is at least entitled to have the Committee follow its rules and give him consideration according to the standards it has adopted in Rule IV." Yellin v. United States, 374 U.S. 109, 121, 83 S.Ct. 1828, 1836, 10 L.Ed.2d 778 (1963)
And again:
"It is important to emphasize that we are not here reviewing and reversing the *manner* in which discretion was exercised. If such were the case we would be discussing the evidence in the record supporting or undermining the alien's claim to discretionary relief. Rather, we object to the Board's alleged *failure to exercise* its own discretion, contrary to existing valid regulations." United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268, 74 S.Ct. 499, 503, 98 L.Ed. 681 (1954)

it could be determined on the record that the reason for the change was the use of the medicine prescribed by Dr. Gelernter in February, 1964. In any event, if the case is reopened the problem facing the Secretary would be different and petitioner would be entitled to the Secretary's judgment on that different problem. Facing the precise problem the Secretary might well conclude that the evidence of earnings between 1961 and 1964 of $1135.92, of which $530.79 is shown to be wages, is not sufficient to overcome the evidence of petitioner's disability particularly since it is not shown whether the wages in 1961 were earned prior to the commitment to the state hospital, and since some of the income is attributable to the operation of a bar which petitioner's wife said she operated.

The cause is therefore remanded to the Secretary to determine whether there is good cause to reopen the application of October 24, 1963, and if there is, then to determine when petitioner last satisfied the special earning requirements of the law, and whether petitioner was under a disability which would give rise to a period of disability at that time.